UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MOUSA MOHAMMAD SHEIKH-ALI,

Petitioner,

v.                                                            CAUSE NO. 3:26cv972 DRL-SJF

MARKWAYNE MULLIN *et al.*,

Respondents.

<u>OPINION AND ORDER</u>

Immigration detainee Mousa Mohammad Sheikh-Ali filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition (in part), and Mr. Sheikh-Ali filed a reply. The petition is ready to be decided.

Mr. Sheikh-Ali is a Palestinian national, born in the West Bank, who entered the United States in 1994. On June 4, 1998, he was convicted in Illinois of aggravated battery with a firearm and was sentenced to five years of incarceration. On September 4, 2001, an immigration judge ordered him removed to Jordan or "occupied territory controlled by the [Palestine Liberation Organization]," but he was released on conditions of supervision on November 17, 2002, after the government was unable to remove him. On October 13, 2025, local law enforcement arrested and charged Mr. Sheikh-Ali with resisting a peace officer. On the same day, Mr. Sheikh-Ali was transferred to immigration custody. He is currently held at the Miami Correctional Facility.

At some point before December 22, 2025, the government submitted a request for travel documents to the Israeli embassy. On June 25, 2026, the government initiated efforts to remove Sheikh-Ali to the Palestinian territories by first submitting a crossing request to the Israeli embassy. This request remains pending, and responses are usually received in three to six months. On July 10, 2026, the government submitted a travel document request to Jordan, which also remains pending. Work is clearly underway.

The respondents first argue that the court lacks subject matter jurisdiction over Mr. Sheikh-Ali's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang, v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Sheikh-Ali ended in December 2001. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S.

2

573, 579 (2022). These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6) as the basis for Mr. Sheikh-Ali's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government

must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Sheikh-Ali has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. The government intends to remove Mr. Sheikh-Ali to Israel, the Palestinian territories, or Jordan. The government appears to

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

have made no progress with respect to its attempt to remove him to Israel for seven months, but the efforts to remove him to the Palestinian territories and Jordan were recently initiated and remain in process.[3] Mr. Sheikh-Ali offers nothing to suggest that these will be unsuccessful beyond asserting that Jordan has no legal obligation to accept him. Nor does the fact that the usual response time for the crossing request spans from three to six months render removal to the Palestinian territories not reasonably foreseeable. Because Mr. Sheikh-Ali has not satisfied his preliminary burden of providing good reason to believe that his removal to Jordan or the Palestinian territories will not occur in the reasonably foreseeable future, the court cannot grant habeas relief on this claim.

Mr. Sheikh-Ali argues that he is entitled to habeas relief because the government has not provided notice of the reasons for revoking his supervised release and has not provided an initial informal interview. He further argues that the government did not make the appropriate findings for revoking his supervised release. "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). Federal regulations require the

---

[3] Here, the court pauses to note Mr. Sheikh-Ali's puzzling representation that the government has acknowledged that "Israel does not issue travel documents to Palestinians." ECF 10 at 7. The court can find no support for this proposition in the record. To the contrary, the respondents argue that "Petitioner has provided no facts or evidence that Israel, as a matter of policy or practice, does not accept Palestinians from the United States." ECF 9 at 7. The court is similarly perplexed by the unsupported representation that Jordan is "a country not designated in Mr. Sheikh-Ali's removal order" given the government's prior sworn description of the removal order as designating Jordan and the Palestinian territories." ECF 9-3 at 2; ECF 10 at 6. Indeed, Mr. Sheikh-Ali does not appear to acknowledge that any country was designated in the removal order.

government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial informal interview "promptly" after a noncitizen's return to immigration custody to afford him an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3).

There is no indication that the government has provided Mr. Sheikh-Ali with notice of reasons for his revocation, an initial informal interview, or a periodic custody review. But governmental records indicate that some determination was made to revoke his supervised release, though the details relating to that determination remain unclear, including whether it was revoked due to a change of circumstances relating to the likelihood or removal, the charged crime, or otherwise. The respondents represent that Mr. Sheikh-Ali has had an ample opportunity to respond to the revocation of his supervision, but the details of this opportunity also remain unclear.

The court cannot make arguments for the parties, and it cannot rule in the dark. The parties must do their job so the court can do its job. Consequently, the court will order the respondents to file a supplemental brief explaining the reasons for revoking Mr. Sheikh-Ali's supervised release and how the revocation complied with the applicable federal regulations and, if not, the proposal to remedy any noncompliance. The court will then allow Mr. Sheikh-Ali to respond. After reviewing the supplemental briefs, the court will assess whether the manner in which supervised release was revoked or the regulatory process that was followed (or not followed) warrants any habeas relief.

For these reasons, the court:

(1) ORDERS the respondents to file a response to this Order, including any relevant evidence, by July 30, 2026; and

(2) ORDERS Mousa Mohammad Sheikh-Ali to file any reply by August 6, 2026.

SO ORDERED.

July 23, 2026                                    s/ Damon R. Leichty
                                                 Judge, United States District Court