UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MOUSA MOHAMMAD SHEIKH-ALI,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN *et al.*,<br><br>Respondents. | CAUSE NO. 3:26cv972 DRL-SJF |

OPINION AND ORDER

Immigration detainee Mousa Mohammad Sheikh-Ali, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. After reviewing the initial round of briefs, the court declined to grant habeas relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), finding that Mr. Sheikh-Ali had not adequately demonstrated that his removal would not occur in the reasonably foreseeable future.

In the same order, the court also considered Mr. Sheikh-Ali's regulatory claims. Specifically, he asserted that the government did not provide notice of the reasons for revoking his supervised release and had not provided him an initial informal interview as required by federal regulations. He further asserted that the government did not make the appropriate findings for revoking his supervised release. The court found that the record lacked sufficient information for a determination on these claims. As a result, the court ordered the respondents "to file a supplemental brief explaining the reasons for revoking Mr. Sheikh-Ali's supervised release and how the revocation complied with the applicable

federal regulations and, if not, the proposal to remedy any noncompliance," and also set a deadline for Mr. Sheikh-Ali to file a supplemental reply brief. The court has now reviewed the supplemental briefs and will now assess whether the manner in which supervised release was revoked warrants any habeas relief.

Mr. Sheikh-Ali is a Palestinian national, born in the West Bank, who entered the United States in 1994. On June 4, 1998, he was convicted in Illinois of aggravated battery with a firearm and was sentenced to five years of incarceration. On September 4, 2001, an immigration judge ordered him removed to Jordan or "occupied territory controlled by the [Palestine Liberation Organization]," but he was released on conditions of supervision on November 17, 2002 after the government was unable to remove him. On October 13, 2025, local law enforcement arrested and charged Mr. Sheikh-Ali with resisting a peace officer. On the same day, Mr. Sheikh-Ali transferred to immigration custody. He is currently held at the Miami Correctional Facility.

On December 17, 2025, the government issued a notice of revocation, stating that it was revoking Mr. Sheikh-Ali's supervised release because he had violated a condition of release when local law enforcement in Illinois arrested him for resisting a peace officer. There is no indication that this notice of revocation was served on Mr. Sheikh-Ali at that time, though the government attempted to serve it on July 30, 2026, and Mr. Sheikh-Ali refused to sign it to confirm receipt. On July 28, 2026, the government issued another notice of revocation, citing Mr. Sheikh-Ali's Illinois conviction for endangering the welfare of a minor in July 2014 as the basis for the revocation. According to this notice, Mr. Sheikh-Ali should have been afforded an initial informal interview on July 28, 2026. It also reflects that

the government attempted to serve this notice of revocation on July 30, 2026, and that Mr. Sheikh-Ali refused to sign it to confirm receipt.

"[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). Federal regulations require the government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial informal interview "promptly" after a noncitizen's return to immigration custody to afford him an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3). Federal regulations also authorize the government to revoke supervised release if the detainee violates a condition of release or if the government determines, on account of changed circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1), (2).

The court observes certain irregularities. Mr. Sheikh-Ali entered immigration custody on October 13, 2025, and the government ostensibly did not issue a notice of revocation until December 17, 2025. There is no indication that the government served or attempted to serve this notice on Mr. Sheikh-Ali until July 30, 2026. The two notices identify a different criminal offense as the underlying basis of the violation. Additionally, the second notice of revocation indicates that Mr. Sheikh-Ali should have been afforded an initial informal interview on July 28, 2026, while also indicating that the government did not attempt to serve the notice of revocation until July 30, 2026.

On this record, it seems the government did not provide Mr. Sheikh-Ali with notice of reasons for his revocation until July 30, 2026—not exactly the immediate notice contemplated by regulation. The two notices cite different crimes; but, of course, one charge came after the other. The first comes nearer in time to his transfer into immigration custody. The second came nearly ten months later, on July 28, 2026.

The respondent cites the second notice of revocation as evidence that Mr. Sheikh-Ali received an initial informal interview. Mr. Sheikh-Ali seems to acknowledge this interview but argues that the initial informal interview was rendered invalid because it occurred two days before the government provided him with notice of revocation. Here, the court is uncertain whether Mr. Sheikh-Ali is speaking from personal knowledge or whether he is merely drawing an inference from the documents; no sworn declaration has been provided, and he offers no specific details about what happened during the interview.

Though the court agrees that providing a detainee with an initial informal interview before notifying him of the reasons for his revocation would not afford the detainee with a meaningful opportunity to dispute the reasons for revocation, sometimes such an irregularity might be cured. The right to procedural due process "is an entitlement to enough process to ensure a reasonable likelihood of an accurate result, not to process for its own sake." *Gometz v. Henman*, 807 F.2d 113, 116 (7th Cir. 1986). Today, the government has provided a reason (or reasons) for revoking Mr. Sheikh-Ali's supervised release, and he has not established that any reason is invalid to justify habeas relief. Mr. Sheikh-Ali offers no significant basis to suspect that a reason for revocation is either legally insufficient or untrue. He contends that the government cannot use an unadjudicated crime as a basis for

revocation or detention, but he cites no authority for this proposition. He offers no reason to think that, even if the court ordered another informal interview, that the result would be any different—in short, that any regulatory snafu was anything more than harmless error. Given that he does not now dispute the reason for revocation, it appears that he would have remained in detention even if he was provided timely notice of revocation and a timely opportunity to dispute his revocation.

Release is not appropriate in every case. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Habeas corpus is not a compensatory remedy. The object is not to make whole someone who has suffered a loss; it is to determine whether a person is being confined in violation of basic norms of legality." *Allen v. Duckworth*, 6 F.3d 458, 460 (7th Cir. 1993). Because Mr. Sheikh-Ali has not demonstrated that either the revocation of his supervised release or his continued detention is unlawful, the court finds that his regulatory claims do not warrant habeas relief. Moreover, the court has already determined that Mr. Sheikh-Ali's detention is lawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), primarily based on the government's active efforts to remove him.

In the reply brief, Mr. Sheikh-Ali also argues that the government's "coercive tactics" entitle him to habeas relief. He alleges that government officials have placed him in solitary confinement, denied him medical treatment, and attempted to coerce his signature on legal documents. Notably, the petition contains no such claim, and only the denial of medical care is even referenced in Mr. Sheikh-Ali's attached affidavit. *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases ("The petition must specify all the grounds for relief available to the petitioner."); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("[A] traverse is

not the proper pleading to raise additional grounds."). And, critically, it is not clear how any of these allegations relate to the current lawfulness of Mr. Sheikh-Ali's detention; they instead appear to relate to the conditions of his confinement, which he cannot challenge in this habeas case. *See Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (observing that "[c]hallenges to conditions of confinement . . . fall under [42 U.S.C.] § 1983," whereas "[a]ttacks on the fact or duration of the confinement" fall under the federal habeas statute).

No one should construe this ruling as condoning any regulatory violation or any alleged poor condition of confinement. The court merely finds that Mr. Sheikh-Ali's detention is not today unlawful, and that there are appropriate measures, as established by law and outside his habeas petition, to redress any unconstitutional condition of confinement.

For these reasons, the court:

(1) DENIES the petition for writ of habeas corpus [1]; and

(2) ORDERS the clerk to enter judgment and close this case.

SO ORDERED.

August 17, 2026

*s/ Damon R. Leichty*
Judge, United States District Court